## A. S. PHELPS *v.* ANDREW HODGE.

An attorney at law had compromised a claim in favor of the plaintiff, against the defendant, amounting to $3000, for $369. The proof of the authority of the attorney rested upon his own evidence, corroborated by the testimony of another witness. *Held:* The plaintiff was bound by the compromise.

APPEAL from the District Court of Jefferson, *Clark*, J. The principal evidence in this case, was as follows: "Received from the defendant, the sum of three hundred and sixty-nine dollars, in full satisfaction of the plaintiff's demand; the plaintiff to pay costs. New Orleans, April 5th, 1848.          ( Signed )          R. M. CARTER, Attorney for plaintiff."

"*Richard M. Carter*, witness for defendant. Testimony taken by consent, subject to legal exceptions, except as to matters of form. Witness knows both parties to this suit. The plaintiff, defendant and witness, were interested in certain lands purchased of the United States. There was a written agreement, which will disclose the nature of the partnership. The plaintiff considered that he had a claim against the defendant, growing out of said co-partnership. Witness was authorized by the plaintiff to make an amicable settlement, and fully authorized to arrange the same. Under this full power to act, witness made a settlement with *Mr. George May*, the agent of defendant, and received from *Mr. May*, a draft for $375, which was paid at maturity, and also, witness' fee. Immediately after the settlement, as above stated, met *Mr. Phelps*, the plaintiff; informed him of the settlement, and tendered him the draft for $375. The plaintiff refused to accept of it, and expressed his dissatisfaction with the settlement. Witness had been employed by plaintiff, to institute suit against the defendant, and had done so in the Fourth District Court, at New Orleans; as shown by the copy of the petition annexed to the answer of defendant herein. That petition was dismissed, upon the exception of the defendant to the jurisdiction of the court. Witness had been always authorized by the plaintiff, to settle and compromise the matter with the defendant; but he believes, that he did not effect the compromise till after the petition had been dismissed. Being shown the receipt annexed, and the answer of defendant herein: says, that was the receipt which he gave; but instead of the sum of $369, as therein expressed, he received a draft, which was considered equivalent to the sum of $369, after deducting the discount. Witness was fully authorized to compromise, and settle the matter in that way, with defendant; witness has now in his hands the amount of the draft, viz: $375."

"Cross-examination: Witness had several conversations with *Mr. Phelps*, as to a compromise, both before and after institution of suit in New Orleans. (Defendant reserves his exception to the conversations of plaintiff with witness out of the defendant's presence.) Witness thinks that the sum of one thousand dollars cash, together with his fee, was mentioned by *Mr. Phelps*, as being satisfactory to him, *Phelps*. Witness had several conversations, in which said amount and his fee were mentioned by *Phelps*. Subsequently to the suit being dismissed, witness saw *Mr. Phelps*, and advised him to compromise; witness does not recollect that *Mr. Phelps* ever mentioned any less sum than one thousand dollars and his fee, as a compromise; but witness acted under, as he believed, a general authority to compromise. Witness informed *Mr. Phelps* that he had effected a compromise, and tendered to *Mr. Phelps* the draft; which draft was refused. Witness is not certain that he told *Mr. Phelps*, that he would institute the suit in the Parish of Jefferson; but recollects that he suggested the name of a person to bring the suit. That witness told *Mr. Phelps*, that if a suit were instituted, that he, *Phelps*, would probably be defeated; and suggested the reasons of this opinion."

"Re-examined: When *Mr. Phelps* mentioned the terms which would be satisfactory to him, he did not limit witness to those terms; but witness considered, that he was authorized to settle on the best terms he could get. *Mr.*

*Phelps* expressed his preference, as to the terms of the settlement. Witness never communicated those terms to defendant's agent. He first asked for him the whole amount of the claim set up by the plaintiff, but afterwards settled with him, on the terms above stated. Witness informed *Mr. May*, as agent of the defendant at the time, that he had full authority to compromise with him. Immediately after the settlement, he tendered to plaintiff the draft he had received."

" *George May*, a witness for defendant, being duly sworn, says: He was the agent of *Mr. Hodge*, and authorized to settle with *Mr. Carter*. He settled with *Mr. Carter* in full for all the claims of *Mr Phelps*, as appears in this case. Had a conversation with *Mr. Phelps* respecting this settlement, after it was made. A short time after the settlement, witness saw *Phelps*, who expressed his dissatisfaction; that *Mr. Carter* ought to have got more. *Phelps* admitted to witness, that *Carter* was authorized to settle the case, but that he expected more than *Carter* received. Witness told *Phelps*, that he had nothing to do with his expectations; that he should have limited *Mr. Carter*. Witness offered to show *Phelps* that a settlement had been made; and believes, that he showed him the receipt of *Carter*. From what *Mr. Phelps* said, witness understood, that *Phelps* admitted *Carter* had full authority to settle the case."

" Cross-examined: This conversation happened shortly after the settlement; not more than two months after. In the conversation, *Phelps* said, that he ought to have received one thousand dollars. At the time referred to, witness paid *Carter* fifty dollars; and the balance of the fee, $50, was paid shortly after. *Carter* said, that *Phelps* had put him in great trouble about this business; had never paid him a cent; and he thought one hundred dollars was not enough. Being asked, whether the settlement alluded to in the conversation referred to the general authority of *Mr. Carter;* replied, that he understood that he was authorized to settle the case by compromise, or otherwise. Witness paid *Carter* in a draft, drawn on *Payne* and *Harrison*. It might have been more, and it might have been less, than a sixty days draft; it was a short draft; it may have been more than a ninety days. Sixty or ninety days paper, is a short paper. *Mr. Carter* offered to return the draft to witness, in consequence of *Phelps'* dissatisfaction with the settlement made; this was shortly afterwards. *Mr. Carter* said, that *Mr. Phelps* thought that he ought to have got more."

" Re-examined : The draft in market would have produced, in cash, the amount called for on the receipt."

The judgment of the district court was as follows : " The defendant, in this case, pleads, by way of exception, that the plaintiff had brought suit to recover the same demand before the Fourth District Court of New Orleans; and that, by a settlement made with the attorney of plaintiff, the claim has been extinguished and satisfied. It is admitted, that the suits are about the same subject matter. In proof of the settlement, the defendant has filed the receipt of *R. M. Carter*, the plaintiff's attorney of record, in the first action in the New Orleans Court. The authority of the attorney to effect the compromise, is established by his own testimony, corroborated by that of another witness, viz., *Mr. G. May*. We consider the receipt of *R. M. Carter* to be a satisfaction and extinction of the demands of the plaintiff.

It is ordered, therefore, and decreed, that the exception by the defendant filed be sustained, and the petition of the plaintiff be dismissed."

*Jourdan* and *Miles Taylor*, for plaintiff, contended : The plaintiff and defendant entered into an agreement, in 1838, with a view to the purchase of lands from the United States, and their re-sale at a profit for the advantage of both.

By the terms of the agreement, the defendant was to furnish the funds necessary for the purchase of the lands; the plaintiff was to select and make the purchases of the lands, in the name of the defendant; and, as a compensation for his services and agency therein, the plaintiff was to receive one-fourth of all the profits on the re-sale of the lands, over and above their original cost, and tho charges incurred.

A very considerable number of tracts of land were purchased in pursuance of this agreement, and a large portion of the same having been re-sold at advanced prices, the plaintiff conceived himself entitled to recover from the defendant, the sum of $3207 65, as his portion of the profits; and, with that object, instituted an action against him in the Fourth District Court of New Orleans, on the 27th of January, 1848, by his attorney and counsellor at law, *Richard M. Carter;* which action was dismissed, on a plea to the jurisdiction, founded on the fact that the defendant was a resident of the parish of Jefferson; and as such, not bound to answer to an action brought against him in the parish of Orleans.

On the 5th of April, 1848, the attorney of record of the plaintiff gave a receipt in the following words: "Received from the defendant, the sum of three hundred and sixty-nine dollars, in full satisfaction of the plaintiff's demand: the plaintiff to pay costs.        (Signed)        R. M. CARTER."

On the 9th of November, 1849, the plaintiff, by his attorney, *Jourdan,* instituted his action, to recover the same amount from the defendant, in the District Court of the parish of Jefferson; and, on the 5th of December, 1849, the defendant filed his peremptory exception to the action, founded, as he alleges, in law; in which he sets forth the institution of the previous suit on the 27th of January, 1848; and that, on the 5th of April thereafter, he, the defendant, paid to *R. M. Carter,* the attorney at law and duly authorized agent and attorney in fact of the plaintiff, the sum of three hundred and sixty-nine dollars, in full satisfaction of the plaintiff's demand. This exception was sustained; and there was judgment, dismissing plaintiff's petition. From this judgment the plaintiff has appealed. The exception was improperly sustained.

1. *Mr. Carter* was without any authority, in his capacity of attorney and counsellor at law, to accept anything less than the amount claimed in satisfaction of the plaintiff's demand, if he can be regarded as the attorney or counsel of the plaintiff, at the time of giving the receipt. That he was, at the time, entitled to represent the plaintiff at all, in his capacity of attorney at law in that suit, admits of great doubt. According to his own statement, the suit was then at an end. But if he were still the attorney at law of the plaintiff in the case, he not only had no authority to accept of a less amount than was claimed in satisfaction of the plaintiff's demand, but was without authority to accept anything in payment, but money. His own testimony, and that of the only other witness, shows that the defendant gave, and he, *Carter,* received a draft, payable at a subsequent time. The receipt was, therefore, a mere nullity, and could in no manner affect the plaintiff. *Perkins* v. *Grant et al,* 2 Ann. 328. *Millaudon* v. *McMicken,* 7 N. S. 145. *William H. Dunbar* v. *Sarah Morris, tutrix,* 3 R. R. 278.

2. If a settlement were made between the plaintiff and the defendant, for a less sum than the amount claimed, it would be in effect a transaction or compromise. This contract must be reduced to writing. C. C. 3038. A power to compromise must be express and special. C. C. 2966. *Gaiennie* v. *Akin's Executor,* 17 L. R. 42. When the contract must be in writing, the power of attorney to empower one to make it, must also be in writing. C. C. 2961. *Stevens* v. *Wellington,* 1st Ann. 72.

3. If, however, parol evidence were considered sufficient to show authority to compromise, that in the record does not show it. The declaration of *Carter* only amounts to this: that he was authorized to negotiate for a settlement; not to make it. He says, he was always authorized to settle and compromise the matter; and yet he says, that "subsequently to the suit being dismissed, (that in New Orleans,) witness saw *Mr. Phelps,* and advised him to compromise." This necessarily implies, that the plaintiff reserved to himself the completion of any settlement or compromise. And this view is supported by the acts and conduct of the plaintiff, after the doings of *Carter* were made known to him.

But if this were otherwise, it is clear from the evidence, that if *Carter* had any authority at all to compromise, it was a limited one to accept a thousand dollars, with the amount of his fee; and as a matter of course, any thing done by *Carter,* in violation of this limitation, cannot, in any manner, bind or affect his principal. It was the defendant's duty to assure himself of the existence and

extent of the power of one acting as agent. The plaintiff, as soon as he was informed of the pretended settlement, repudiated it. 6 L. R. 47.

If, upon the loose and vague declarations, such as those contained in the testimony in the record, and that, too, of witnesses situated as *Carter* and *May* were, the claims of individuals are to be considered as extinguished by a receipt, such as given in this case by *Carter*, there will no longer be any safety for parties who unfortunately become involved in litigation. C. C. 2990.

*Hunton* and *Bradford*, for defendant.

The judges of the court delivered their opinions *seriatim*.

PRESTON, J. The plaintiff having sued the defendant for upwards of $3000, the latter excepted, that the plaintiff having before sued for the same cause of action, he had paid *R. M. Carter, Esq.*, his attorney at law and duly authorized agent and attorney in fact, $369, in full satisfaction of the demand. He produces in evidence, a receipt of *Mr. Carter*, dated the 5th of April, 1848, headed with the title of the suit and the name of the court, for $369, in full satisfaction of the claim. It is signed by *Carter*, as attorney for the plaintiff.

The exception of the defendant rests for its support, principally, on the testimony of *Mr. Carter;* and examining it minutely, it appears to me, he may have mistaken a special and limited power to compromise for a thousand dollars, for a general power.

An agent may undoubtedly prove his agency ; but when it is disputed, the testimony should leave no doubt or uncertainty upon the subject, for two reasons : 1. A man who disposes of another's property, is extremely imprudent in resting his authority on his own testimony alone, when two or three lines in writing would have prevented all doubt and uncertainty. 2d. A debtor who takes a discharge from any other person than his creditor, is extremely imprudent in not having the authority in writing, when it could be obtained as easily as in the present case ; for the plaintiff and defendant lived in one parish, the attorney in another. In law, moreover, it is the duty of a party taking a discharge from an agent, to see that he has authority to give it ; and his risk and loss, if it is given without authority.

In the next place, our laws require that a compromise or transaction should be reduced to writing. Code, art. 3038. When made by an agent, I think the power should also be in writing. The agency is so much a part of the contract, that there should be as high, certain, and indisputable evidence of the agency as of the contract itself.

The good order of society, and tranquillity of persons weary or fearful of litigation, requires that a power to compromise or refer a matter to arbitration, or to make a transaction on a matter in litigation, should be in writing. In all these cases, the parties in some degree renounce the laws of the land and the tribunals of the country established for their protection ; and their renunciation should rest upon the highest and most certain evidence.

The lawgiver, in framing article 2966, intended this, in requiring the power to be express and special, when the thing to be done was in writing; though, undoubtedly, if the thing to be done might be done verbally, as to sell a movable, the power might be verbal; and our late Supreme Court constantly adhered to this principle. 3 N. S. 149. 17 L. R. 42. 13 L. R. 484. 8 L. R. 568.

On the trial of the exception, the defendant having admitted parol proof, without objection as to the power to compromise, if that testimony left the power entirely free from doubt, I would yield to it. The testimony, however, induces me to think, there was not a clear and distinct understanding between *Phelps* and *Carter*, that the last might compromise for whatever he might think proper,

or indeed for less than a thousand dollars. And there is the more reason for disallowing a compromise, decreed without clear and satisfactory evidence to establish it, because it is a contract supposed to be based upon a fair and equitable adjustment of the rights of the parties; and neither, therefore, can be really injured by disallowing it as a peremptory exception, when there is a misunderstanding between them.

I think the exception should be overruled, and the cause remanded to be tried on its merits.

ROST, J. ` I concur in the foregoing opinion, delivered by Judge Preston, in this case.

EUSTIS, C. J. I concur in the opinion of the district judge, as to the evidence in this cause, and therefore think the judgment should be affirmed.

SLIDELL, J. I also concur in the opinion of the district judge.

The judges of the court being equally divided in opinion in this case: it is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed, with costs.